UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

BETHANY FRANCIS                                                                                      PLAINTIFF

v.                                                                              CIVIL ACTION NO. 3:10-CV-00704

CUTE SUZIE, LLC d/b/a IDEAL IMAGE                                                       DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on the motion of defendant Cute Suzie, LLC d/b/a Ideal Image ("Ideal Image") to compel arbitration (DN 7). Plaintiff Bethany Francis ("Francis") has responded (DN 8), and Ideal Image has replied (DN 10). For the reasons set forth herein, Ideal Image's motion will be **GRANTED**.

## BACKGROUND

Francis claims that she received "extensive" burns on her legs and trunk as the result of a laser hair removal procedure at a facility operated by Ideal Image.

In May 2007, Francis purchased an "All-Inclusive Package" for laser hair removal treatments at an Ideal Image location in Louisville, Kentucky. In connection with her treatment, Francis signed a document known as the Laser Hair Removal Agreement ("LHRA"). The LHRA stated that in exchange for a payment of $4520.00, Francis would receive five "full" laser sessions, as well as four "touch-up" sessions if needed. *See* LHRA Schedule B-1, DN 7-2 at 4. The LHRA also stated that the "All-Inclusive Package" included a "lifetime membership" with Ideal Image, whereby Francis could receive re-treatment of the same area that was initially treated at a discounted rate. *Id.* Over the next two years, Francis received the five "full"

treatments and the four "touch-up" treatments called for in the LHRA. On November 9, 2009, Francis returned to Ideal Image for a follow-up treatment, for which she paid $50.00. Francis claims that it was during this visit that her injuries occurred.

In October 2010, Francis sued Ideal Image in Jefferson County, Kentucky Circuit Court. She alleged that Ideal Image negligently caused the injuries she suffered during the November 2009 treatment. Francis also alleged that Ideal Image was liable for breach of warranty because it had advertised its hair removal services as "permanent," but that Francis still has hair on her legs. Francis further claimed that Ideal Image made unfair, false, and misleading statements in its advertisements in violation of the Kentucky Consumer Protection Act ("KCPA"). In November 2010, Ideal Image removed the action to this court on diversity grounds, and now moves to compel arbitration pursuant to an arbitration clause in the LHRA. Francis objects, arguing that the November 2009 treatment was not covered by the LHRA, or, in the alternative, that the arbitration provision is procedurally and substantively unconscionable and therefore unenforceable.

## ANALYSIS

Because the parties agreed that the LHRA would be governed by and subject to the laws of the state of Kentucky, the Kentucky Uniform Arbitration Act, KY. REV. STAT. § 417.045 *et seq.*, governs our analysis here. *See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Under the Act,

> A written agreement to submit any existing controversy to arbitration or a provision in written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract.

KY. REV. STAT. § 417.050.

The paragraph containing the arbitration provision in the LHRA reads as follows:

> Our failure to exercise any rights under this Agreement will not be deemed a waiver of such right or any other rights. Both parties each waive to the full extent permitted by law any right to, or claim for, any punitive or exemplary damages against the other. Both parties agree that, in the event of a dispute between you and us, the party making a claim will be limited to equitable relief and recovery of any actual damages it sustains. Both parties irrevocably waive trial by jury in any action, proceeding or counterclaim, whether at law or in equity, brought by either party. Any litigation, claim, dispute, suit, action, controversy, proceeding or otherwise between or involving the parties (and/or involving you and/or any claim against or involving us or our affiliates, shareholders, directors, partners, officers, employees, agents, attorneys, accountants, affiliates, guarantors or otherwise), which are not resolved within 45 days of notice from either you or us to the other party, will be resolved by and submitted to binding arbitration to the office of the American Arbitration Association closest to our address on this Agreement.

LHRA (DN 7-2) at 1.

Francis first argues that she is not bound by the arbitration provision because the treatment she received on November 9, 2009 was not performed pursuant to the LHRA. Francis claims that her contractual relationship with Ideal Image ended when she received her last "touch-up" session. She claims that upon her visit in November 2009, Francis and Ideal Image entered into a separate oral contract under which Francis paid Ideal Image $50.00 to have her legs and trunk re-treated. This alleged oral contract did not contain an arbitration provision; thus, Francis claims, any injuries she suffered as a result of the final treatment are not covered by the LHRA arbitration clause.

Francis compares her situation to that of the plaintiff in *Sanford v. H.A.S., Inc.*, 136 F. Supp. 2d 1215 (M.D. Ala. 2001). In *Sanford*, the plaintiff purchased a vehicle from the defendant pursuant to a purchase contract that contained an arbitration provision. *Id.* at 1218. The plaintiff was dissatisfied with his purchase and returned the car to the seller two days later. *Id.* Three days

after that, however, the plaintiff decided he wanted the car after all, and signed a new purchase contract that did not include an arbitration provision. *Id.* The court held that the plaintiff was not bound by the arbitration provision in the first contract because the second contract had superseded it. *Id.* at 1223. Francis argues that a similar situation occurred here in that she purchased and received the initial set of hair removal treatments pursuant to the LHRA, then returned for an entirely separate transaction in November 2009.

Francis' "separate transaction," argument, however, is unavailing because of the "lifetime membership" provision in the LHRA. This provision entitles Francis to re-treatment of the previously treated area at a discounted rate. Francis does not dispute that she received re-treatment of the area that was previously treated pursuant to the LHRA, nor does she contest that she received the rate called for in the "lifetime membership" provision. Thus, unlike *Sanford*, where the plaintiff engaged in two separate transactions pursuant to two separate contracts, Francis' "follow-up" treatment was performed pursuant to the original LHRA. Even though Francis made a separate payment for the November 2009 treatment, it was nonetheless done in accordance with the LHRA, and therefore is covered by the LHRA arbitration clause.

Second, Francis argues that the arbitration provision is both procedurally and substantively unconscionable. Under Kentucky law, "procedural unconscionability" refers to "the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 342 n.22 (Ky. Ct. App. 2001). Francis argues that the LHRA's arbitration provision is procedurally unconscionable because it is in the same font as the rest of the agreement, because it was "buried" within a paragraph whose first sentence addresses the

effect of Ideal Image's failure to waive any of its rights, and because no one from Ideal Image explained the arbitration provision to Francis or told her of its existence.

We do not agree with Francis' assessment. The clause was set forth on the first page of a relatively brief form.[1] It was not buried deep within the Agreement, nor was it in "fine print." Francis argues that the arbitration provision was "buried" four sentences into a paragraph in the LHRA that begins by discussing the effect of Ideal Image's failure to exercise its rights under the contract. Although the presentation of the clause is not a model of clarity, the arbitration provision was nonetheless on the first page of the contract, and was written in clear, legible type. Finding the clause would have required little effort on Francis' part, and the court does not agree that requiring a party to a contract to read four sentences into a paragraph is so onerous or deceptive as to be procedurally unconscionable.

The provisions of the clause are also "clearly stated such that purchasers of ordinary experience and education" would be likely to understand them, at least in their general import. *Id.* The clause states in clear, unambiguous language that the parties to the contract waive their rights to a jury trial and that all disputes not resolved within 45 days are to be submitted to arbitration. And the effect of the clause is "not such as to alter the principal bargain in an extreme or surprising way." *Id.* Further, Francis acknowledged on page 3 of the LHRA that she had read the LHRA in full, that she understood its provisions, and that she had the opportunity to ask questions regarding the Treatments, which would logically encompass anything contained in

---

[1]The LHRA as submitted to the court consists of five pages. The first sets forth the substantive provisions of the contract (such as the governing law, agreement to pay, merger clause, and arbitration provision). The second page consists of a signature page. The third page is a medical "Informed Consent" form providing details about the laser treatments. The fourth page sets forth the fees for the treatments. The fifth page contains diagrams upon which treatment areas were to be marked.

the LHRA. *See* Informed Consent form, DN 10-1 at 3. Thus, even if Ideal Image did not explicitly point out the arbitration clause, Francis nonetheless acknowledged that she read the LHRA and had the opportunity to ask questions about the clause's meaning and import. All of these considerations lead us to conclude that the LHRA was not procedurally unconscionable.[2]

Substantive unconscionability refers to "contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Id.* at 343. Francis claims that the arbitration provision is substantively unconscionable because "it purports to bar any recovery of any damages save actual damages and 'equitable relief.'" DN 8 at 9. However, a close reading of the arbitration provision reveals that this is not the case. However, a close reading of the arbitration provision reveals that this is not the case. Although the arbitration clause is contained in the same paragraph as the limitation of damages, the arbitration clause and the limitation of liability are distinct and separately operative parts of the contract.

The separation of the limitation of liability and arbitration clauses distinguishes this case from *Mortgage Electronic Registration Systems, Inc. v. Abner*, 260 S.W.3d 351 (Ky. Ct. App. 2008), the case upon which Francis rests her argument of substantive unconscionability. In *Abner*, the Kentucky Court of Appeals held that an arbitration clause that explicitly limited the damages an arbitrator could award was substantively unconscionable because it precluded the plaintiffs from "meaningfully pursuing" their statutory claims against the defendant. *Id.* at 355.

---

[2]Francis cites a case from the California Court of Appeal in which a court held that an arbitration clause was procedurally unconscionable in part because it was in the same font as the rest of the contract, was not set off from other sections of the contract, and was not fully explained to the individuals signing the contract. *Higgins v. Superior Court*, 140 Cal. App. 4th 1238, 1252–53 (2006). This case does little to help Francis' case for two reasons: first, because it is not binding on this court, and second, because there were many other factors present in *Higgins* – such as the youth and lack of sophistication of the signers – that contributed to the court's finding of procedural unconscionability. Such factors are not present here.

The clause at issue in *Abner* expressly barred the arbitrator from awarding any damages other than "actual and direct damages," and also barred the arbitrator from varying or modifying any of the terms of the contract. *Id.* at 352.

In contrast, the arbitration clause in the LHRA simply states that the parties agree to submit all disputes between them that are not resolved within 45 days to arbitration. Unlike the clause in *Abner*, the LHRA arbitration clause does not limit the arbitrator's powers to award damages or to modify or vary the terms of the contract. If upon submission of this matter to arbitration, the arbitrator determines that the limitation of damages provision in the LHRA is unconscionable or otherwise unenforceable, he would have the power to disregard it pursuant to the LHRA's severability clause. Thus, Francis' argument for substantive unconscionability is unconvincing.

Because the court concludes that the arbitration clause in the LHRA was not procedurally or substantively unconscionable, the arbitration agreement will be enforced. This matter will be submitted to arbitration in accordance with the LHRA, and Francis' claims against Ideal Image will be dismissed from this court without prejudice.

A separate order will issue in accordance with this opinion.